RENDERED:  AUGUST 7, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0896-MR

PUPPYGRAM COM, LLC                                        APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 25-CI-002193

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT D/B/A
LOUISVILLE METRO ANIMAL SERVICE                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, A. JONES, AND L. JONES, JUDGES.

CETRULO, JUDGE:  Puppygram Com LLC ("Puppygram"), a foreign limited liability company, appeals an order of the Jefferson Circuit Court (1) denying Puppygram's motion to dismiss and (2) granting Louisville/Jefferson County Metro Government's ("Louisville Metro") request for injunctive relief.  Louisville Metro had sought enforcement of local ordinances that prohibited the sale of dogs and cats at retail pet stores within Louisville.  Puppygram argued its recent change

from retail store to pet rescue organization avoided an ordinance violation. The circuit court disagreed and granted injunctive relief prohibiting Puppygram from selling dogs and cats in Louisville. Finding the circuit court's factual findings were supported by substantial evidence, no error in the circuit court's interpretation or application of the law, and no abuse of discretion in granting the injunctive relief, we affirm.

## BACKGROUND

On October 3, 2024, Louisville Metro Code of Ordinance ("LMCO") § 91.141 took effect. Generally, the ordinance provides minimum standards for the care and keeping of animals at kennels and catteries or offered for sale in retail pet stores. It contains a straightforward prohibition: "It shall be unlawful for a retail pet store . . . to sell or offer for sale a dog or cat." A "retail pet store" is a "commercial establishment that sells or offers for sale animals on its premises at retail" notwithstanding what type of license (if any) the establishment holds.

Between October 3-7, 2024, Louisville Metro issued five citations to Puppygram for continuing to operate in violation of LMCO § 91.141 by selling dogs through its Louisville retail store. Presumably in response to the citations, Puppygram filed a complaint and motion for injunctive and restraining order relief in Jefferson Circuit Court ("Original Action"). After briefing and arguments, the circuit court issued a February 2025 Order upholding the legality, enforceability,

and constitutionality of LMCO § 91.141 and dismissing Puppygram's complaint. On March 7, 2025, the circuit court denied Puppygram's motion to alter, amend, or vacate its prior order. On appeal, this Court, in a May 2026 Opinion, affirmed the circuit court. *Puppygram Com LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 2025-CA-0433-MR, 2026 WL 1500961, at *6 (Ky. App. May 29, 2026).

In March 2025 – *after* the circuit court ruled in its favor but *while* Puppygram's appeal was with this Court – Louisville Metro filed its own complaint with the Jefferson Circuit Court. In this March 2025 complaint, Louisville Metro sought a permanent injunction prohibiting Puppygram from selling dogs and cats from its Louisville retail store ("Injunctive Relief Action"). This Injunctive Relief Action is the root of this appeal. In this action, Louisville Metro argued that – despite prior circuit court orders and an additional six citations issued between February 26, 2025 and March 13, 2025 – Puppygram continued to operate in violation of LMCO § 91.141. The next month, in April, Louisville Metro also sought temporary injunctive relief during the pendency of the action. Louisville Metro asserted that the citations were having no impact as a deterrent. Puppygram continued to sell puppies from its Louisville retail store.

In April 2025, Puppygram responded, objected to Louisville Metro's requests for injunctive relief, and moved to dismiss Louisville Metro's complaint. Puppygram asserted injunctive relief was not appropriate because (1) it was no

longer operating in violation of local ordinances; and (2) Louisville Metro's claim failed on procedural grounds.[1]

First, Puppygram argued that LMCO § 91.141 banned the sale of puppies only at *retail stores*. In this regard, Puppygram asserted it rebranded its Louisville location as Rescue Paws Puppy Project, Inc. ("Rescue Paws") and began operating as an adoption and rescue agency. "The Louisville location [] provides puppies for adoption and acquires those animals from a non-profit rescue." The puppies listed for sale on Puppygram's website were located at its Detroit and Indianapolis locations, not its Louisville location. As the latter no longer operated as a retail store but as a rescue organization, Puppygram argued it was no longer in violation of local ordinances.

Second, Puppygram argued that Louisville Metro's Injunctive Relief Action was procedurally improper because Kentucky's civil rules required it to be filed as a counterclaim to the Original Action. Puppygram argued "Kentucky law requires that a party must plead a counterclaim against [an] opposing party if it arises from the same transaction or occurrence as the opposing party's claim."

In May 2025, Louisville Metro responded and argued that Puppygram was still operating as a retail pet store and, as the Original Action addressed purely

---

[1] Additionally, Puppygram repeated constitutional challenges to the ordinances that were adjudicated in the Original Action and affirmed on appeal. However, those adjudications reached finality and are not relevant to this appeal.

questions of law pertaining to the legality of LMCO § 91.141, it was not required to file an answer or any other pleading in that action beyond its successful motion to dismiss.[2] Louisville Metro asserted it was expressly permitted by ordinance to move for injunctive relief.

On June 12, 2025, the Jefferson Circuit Court held an evidentiary hearing. At that hearing, the court heard testimony from Officer Robbi Ratliff of Louisville Metro Animal Services ("Officer Ratliff"), Sergeant Lisa Nagle ("Sgt. Nagle") of Louisville Metro Police's Animal Cruelty Unit, and Miles Handy ("Mr. Handy"), the owner/operator of Puppygram and incorporator of Rescue Paws.

Officer Ratliff testified that the fee charged for "adopting" puppies from the Louisville location of Puppygram was equivalent to the "sale" price of puppies of the same breed at Puppygram's other locations in Indianapolis and Detroit. He stated the main difference on Puppygram's website between the puppies from Indianapolis and Detroit and those from Louisville was that the Indianapolis and Detroit locations listed sale prices, while puppies of the same breed based in Louisville were listed for "adoption" without a price. Also, Officer Ratliff compared Puppygram's adoption contract with its sale contract; the

---

[2] In April 2025, after Puppygram filed its response, the circuit court transferred the Injunctive Relief Action to the circuit court division that handled the Original Action "to ensure proper continuity and avoid potentially disparate rulings from the appellate courts in the future."

contracts appeared to mirror one another, except for replacing the word, "sale," with "adoption." Both contracts listed Puppygram as the "owner" of the puppies.

Sgt. Nagle testified that during her visit to Puppygram's Louisville location, each puppy kennel listed the individual puppy's date of birth and the breeder's name and location. She also inquired about the adoption fees for a bulldog puppy, noting the fee ranged from $3,500 to $4,300 depending on whether the payment was financed or paid for in cash. Sgt. Nagle testified that these prices were similar to those prices of the puppies listed for sale in Detroit and Indianapolis, and from her experience, adoption agencies do not finance the purchase of puppies. She also took photographs of puppy "for sale" signs at Puppygram's Louisville location.

Mr. Handy admitted that he was the owner of Puppygram and incorporator of Rescue Paws. He testified that Rescue Paws acquired at least some of its puppies from breeders, but those puppies were "breeder surrenders" due to health concerns or as a result of excess puppies.

At the close of the hearing, the court orally granted Louisville Metro's motion for a permanent injunction and followed with a written order on June 18. In its June 18 Order, the circuit court denied Puppygram's motion to dismiss and granted Louisville Metro's requests for a temporary and permanent injunction. The court made detailed findings of fact and conclusions of law, determining that:  (1)

Puppygram remained a "retail pet store" as defined in LMCO § 91.001 and did not fall within the exception provided under LMCO § 91.141(C); (2) Rescue Paws was not an "animal rescue organization" as defined in LMCO § 91.001; (3) Puppygram's continued sale of dogs and cats constituted an ongoing violation of LMCO § 91.141(A); and (4) Louisville Metro was irreparably harmed by Puppygram's continued violation of LMCO § 91.141. The circuit court ordered Puppygram to discontinue the sale of dogs and cats from its Louisville location or any other establishment in Jefferson County, effective June 22, 2025. Puppygram appealed.

**STANDARD OF REVIEW**

As this action was tried without a jury, we review the trial court's factual findings for clear error and legal determinations *de novo*. CR[3] 52.01; *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (citations omitted). In reviewing whether or not the trial court's factual findings are clearly erroneous, this Court looks at "whether or not those findings are supported by substantial evidence." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted). "Substantial evidence" means "'[e]vidence that a reasonable mind would accept as adequate to support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, . . . has sufficient probative value to induce conviction in the minds of reasonable men.'" *Id.* (alterations in original) (first

---

[3] Kentucky Rule of Civil Procedure.

quoting BLACK'S LAW DICTIONARY 580 (7th ed. 1999); and then *Blankenship v. Lloyd Blankenship Coal Co.*, 463 S.W.2d 62, 64 (Ky. 1970)). Because it is for the trial court to weigh the credibility of witnesses and weight of the evidence, "[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal." *Id.* (alterations in original) (quoting 7 *Kurt A. Phillips, Jr., Kentucky Practice, Rules of Civil Procedure Annotated*, Rule 52.01, cmt. 8 (5th ed. 1995)).

Furthermore, the decision to grant an injunction is reviewed for abuse of discretion. *Maupin v. Stansbury*, 575 S.W.2d 695, 697-98 (Ky. App. 1978) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

On appeal, Puppygram challenges both the circuit court's factual findings (such as the court's determination that Puppygram still operated as a retail store), and the court's application of those facts to local ordinances (mainly the court's determination that it did not fall within the pet rescue exception).

Puppygram asserts the circuit court failed to properly apply the local ordinances to Puppygram's *current* operation and erroneously relied upon "older contractual forms and generalized suspicion of the business model" to support its

-8-

conclusion that Puppygram was still operating as a retail store. On appeal, Puppygram repeats Mr. Handy's testimony that Puppygram was not "selling" animals, but rather, merely charging a "fee for adoption." Puppygram directs us to various corporate formation documents and "proof" that the organization acted as an animal rescue organization. Yet, we must address these arguments within our limited standard of review. This appeal is not an opportunity to relitigate the *facts* of the case, and we may not make factual findings anew. The circuit court's factual findings must be affirmed if not clearly erroneous, *i.e.*, if supported by substantial evidence. *Moore*, 110 S.W.3d at 354 ("judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus, [m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal[.]") (internal quotation marks and citations omitted).

As stated by the circuit court, the local ordinance prohibits the sale of dogs and cats through retail stores. In the Original Action, Puppygram admitted that it bred and purchased puppies for resale and that it operated a "retail pet store" focused on the retail sale of dogs. *Puppygram Com LLC*, 2026 WL 1500961, at *1. Despite Puppygram's attempt to change its business model, the circuit court concluded that the change was insufficient to protect it from ordinance violations. The circuit court held that despite attempts at rebranding, Puppygram still operated as a retail pet store and did not fall within the ordinance's pet rescue exception.

LMCO § 91.141(C) states, in pertinent part, that the ordinance in question does not prohibit animal rescue organizations from "publicly showcas[ing] dogs or cats available for adoption[,] provided that the provider does not maintain an ownership interest in any of the animals offered for adoption or receive a fee for providing such space." For purposes of LMCO § 91.141, the definition of an "animal rescue organization" excludes entities that "facilitate[] the sale of dogs or cats obtained from a person [who] breeds animals." LMCO § 91.001(4).

The circuit court found that Puppygram maintained an ownership interest in its animals, and the "adoption" fee was commensurate with the sale prices at its other locations. While the court recognized Puppygram's adoption contract and sale contract did contain some verbiage discrepancies, the adoption contract nonetheless referred to puppies being "sold" and Puppygram as the puppies' "Owner." The court held that Rescue Paws obtained at least some of its animals from breeders and was not an animal rescue organization as defined by LMCO § 91.001. Despite charitable designations, the evidence presented by Officer Rattliff and Sgt. Nagle supported the court's conclusion that Puppygram did not "showcase" Rescue Paws' pets and remained a retail pet store. More specifically, the court stated:

> There are several problems with Puppygram's attempt to fall within the exemption created by LMCO § 91.141(C).

-10-

While Rescue Paws was organized as a 509(a)(2) public charity and has been granted 501(c)(3) status by the IRS[], Mr. Handy testified that Rescue Paws, which supplies Puppygram's puppies for its Louisville location, obtains at least some of its pets from breeders. While he characterized this as a "breeder surrender" due to health concerns and/or when the breeder had too many puppies, the definition of an animal rescue organization excludes entities who obtain dogs or cats from a person [who] breeds animals. Indeed, the signage for puppies available for "adoption" at Puppygram's Louisville location identifies the breeders of "Lola" and "Spencer" by name and location.

Clearly, the circuit court analyzed Puppygram's operations and was unpersuaded by its attempt to circumvent LMCO § 91.141.

Calling into question Mr. Handy's credibility, the court noted the evidence and testimony introduced at the evidentiary hearing contradicted Mr. Handy's assertions. The court compared Puppygram to "a shell corporation existing to funnel pets to Puppygram's Louisville location in an attempt to fall within the exception provided by LMCO § 91.141(C)." On appeal, Puppygram takes umbrage with the court referring to Rescue Paws and/or Puppygram as a "shell corporation." Yet, we agree with Louisville Metro that in so doing, the court was conducting a factual and statutory analysis – whether Puppygram's operations fell within the narrow exception of LMCO § 91.141(C) – *not* an equitable corporate law determination. The court's use of "shell corporation" merely implied that the court was unpersuaded by Mr. Handy's testimony and believed

-11-

that despite any charity designation and/or tax status, Puppygram was still operating as a retail store selling dogs in violation of local ordinances. Again, we must be cognizant of the fact that it is the circuit court's role to judge the credibility of the witnesses, not ours. The court was free to rely upon the testimony of Officer Ratliff and Sgt. Nagle over that of Mr. Handy. The circuit court's factual findings are supported by substantial evidence, and we find no error of law in its application of those facts to the ordinances.

Next, Puppygram challenges the circuit court's determination that injunctive relief was warranted. The circuit court stated:

> [Louisville Metro's] attempt to enforce LMCO § 91.141 via an injunction is authorized via LMCO § 99.999(B)(3)(b) which specifically authorizes the Director [of Louisville/Jefferson County Metro Animal Services] "to enforce the provisions of [Chapter 91: Animals] through declaratory, injunctive and other civil actions filed in any court of competent jurisdiction." [Louisville Metro] seeks temporary and permanent injunction [requiring] Puppygram to cease selling dogs and cats pursuant to CR 65.04.

Quoting *Price v. Paintsville Tourism Commission*, 261 S.W.3d 482, 484 (Ky. 2008), the circuit court elaborated on the rule governing injunctive relief, CR 65.04.

> [CR 65.04] has been construed as requiring the trial court to deny injunctive relief unless it finds (1) that the movant's position presents "a substantial question" on the underlying merits of the case, *i.e.* that there is a substantial possibility that the movant will ultimately prevail; (2) that

-12-

the movant's remedy will be irreparably impaired absent the extraordinary relief; and (3) that an injunction will not be inequitable, *i.e.* will not unduly harm other parties or disserve the public.

The circuit court then discussed the irreparable harm requirement as it related to governmental entities and cited clear precedent from our Supreme Court.

The required showing for issuance of [an] injunction is relaxed when an injunction is sought by a governmental entity to enforce its police powers. In such case, any alternative legal remedy is ignored and irreparable harm is presumed. Where the government is enforcing a statute designed to protect the public interest, it is not required to show irreparable harm to obtain injunctive relief; the statute's enactment constitutes Congress's implied finding that violations will harm the public and ought, if necessary, be restrained.

*Boone Creek Props., LLC v. Lexington-Fayette Urb. Cnty. Bd. of Adjustment*, 442 S.W.3d 36, 40 (Ky. 2014) (quoting 42 Am. Jur. 2d *Injunctions* § 147). Simply, the law itself implies that violations will harm the public. *Id*.

Here, the circuit court concluded Louisville Metro met its burden as (1) Louisville Metro presented a substantial possibility that it will ultimately prevail; (2) Louisville Metro established that Puppygram's ongoing and continued violation of LMCO § 91.141 creates a rebuttable presumption of irreparable harm necessitating injunctive relief; and (3) equitable factors favor granting the requested injunctive relief as Louisville Metro is only seeking to enforce an

already passed, effective, and established ordinance, and Puppygram was the only business known to be operating in contravention of the ordinance.

On appeal, Puppygram appears to argue the circuit court improperly presumed irreparable harm existed based on an unsupported finding that Puppygram was engaging in retail pet sales. However, as noted above, the circuit court *did* base its finding that Puppygram was operating as a retail pet store on substantial evidence. We find no error in the court's determination that Louisville Metro met its burden for injunctive relief.

Lastly, Puppygram argues the circuit court "improperly blurred the distinction between temporary injunctive relief and permanent injunctive relief." Puppygram appears to argue a permanent injunction is improper if there exists a question as to the constitutionality of the underlying ordinance. Puppygram asserts that as the Original Action (adjudicating the constitutionality of the ordinances in question) was on appeal at the time the circuit court granted the injunction, the court did not have the legal finality required to grant a permanent injunction. However, we disagree. The circuit court *had* determined the ordinances were constitutional and enforceable prior to finding irreparable harm. The circuit court's conclusions were not invalidated simply by Puppygram's filing of the appeal in the Original Action. Regardless, this Court's May 2026 Order finding that the ordinances were constitutional and enforceable negates the need for us to

address this argument further.  Simply, Puppygram does not show how the circuit court's grant of injunctive relief was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.  Therefore, Puppygram did not meet its burden of establishing the grant of injunctive relief was an abuse of discretion.

## CONCLUSION

Accordingly, we AFFIRM the Jefferson Circuit Court order denying Puppygram's motion to dismiss and granting Louisville Metro's requests for injunctive relief.

ALL CONCUR.


BRIEF FOR APPELLANT:

Nader George Shunnarah
Louisville, Kentucky

BRIEF FOR APPELLEE:

Robbie J. Howard
Assistant County Attorney
Louisville, Kentucky